No. 2849

Second Circuit

VIDRINE v. TEXAS & PACIFIC RAIL-
ROAD CO.

(January 28, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest — Laws — Par. 70;
Railroads—Par. 87, 88.**

The public policy of Act 70 of 1886 is that
railroad companies shall pay for live
stock killed in the operation of their
trains unless they shall allege and
prove that the killing was without
negligence on their part.
State vs. Foster, 106 La. 425, 31
South. 57.

2. **Louisiana Digest—Railroads—Par. 87,
88.**

Prior to the passage of Act 70 of 1886
the burden was on the plaintiff, in an
action against a railroad company for
the value of live stock killed in the
operation of its train, to allege and
prove that the killing was the result of
negligence on the part of the defendant.
Mire vs. Y. & M. V. R. R. Co., 105 La.
462, 29 South. 935.

3. **Louisiana Digest—Railroads—Par. 88,
89; Evidence—Par. 58, 337.**

Where two witnesses for the plaintiff tes-
tify to the existence of certain facts
and two witnesses for the defendant
testify to the existence of opposite facts
and both sets of witnesses are of equal
credibility and intelligence and had
equal opportunities of learning the
facts, nothing is proved; and where,
as in this case, the burden was on
the defendant to prove its special de-
fense that the killing of the live stock
was unavoidable, it has failed to dis-
charge that burden.

4. **Louisiana Digest—Railroads—Par. 85.**

Since the passage of Act 70 of 1886 it is
not negligence on the part of the owner
of live stock not to fence them away
from railroad tracks.

5. **Louisiana Digest—Railroads—Par. 89;
Evidence—Par. 58.**

In this case, the burden of proof being upon
the defendant, two witnesses for the
plaintiff having testified to the ex-
istence of facts diametrically opposite
to those testified to by two witnesses
for the defendant, and the trial court
having accepted the version of the
plaintiff's witnesses, we cannot say that
it erred.

6. **Louisiana Digest—Railroads—Par. 88,
89.**

In this case the burden was on the de-
fendant to prove that the killing of the
live stock was unavoidable. Two of
its witnesses testified that at the time
the trains struck and killed the live
stock a heavy fog prevailed, rendering
it impossible for the trains to be
stopped before striking them after they
were discovered on the track. Two of
plaintiff's witnesses testified that there
was no fog at the time and place the
animals were killed. Both sets of
witnesses were of equal credibility
and intelligence and had equal oppor-
tunities for learning the facts. There-
fore, the defendant failed to discharge
the burden of proof resting upon it.

Appeal from the Ninth Judicial District
Court of Louisiana, Parish of Avoyelles.
Hon. R. C. Culpepper, Judge.

Action by Collins F. Vidrine against
Texas and Pacific Railway Company.

There was judgment for plaintiff and
defendant appealed.

Judgment affirmed.

Wade J. Broussard, of Marksville, attor-
ney for plaintiff, appellee.

Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J.    This suit is to recover $375.00, the alleged value of three Jersey cows killed by defendant's trains.    Both animals were killed on the same day and at the same place and almost at the same time, two of them being killed by a southbound train at approximately 3 o'clock A. M., and the other being killed at approximately 3:15 o'clock A. M. by a northbound train.

Defendant denied liability and alleged that plaintiff was barred from recovering because he had been guilty of contributory negligence in permitting his cows to go upon its track.   It also alleged that a dense fog, existing at the time and place the animals were killed, rendered it impossible for the engineers in charge of the locomotives to stop their trains after discovering the live stock on the track and before striking them.

On these issues the case was tried and there was judgment in favor of the plaintiff for the amount claimed, and the defendant appealed.

## OPINION

Defendant's contention that plaintiff was negligent in not keeping his cows off of its track, and for that reason cannot recover, is not, in our opinion, sound, for the reason that Act 70 of 1886 makes railroad companies responsible for the value of live stock killed in the operation of their trains:

"* * * unless it be shown by the defendant company that the killing or injury was not the result of fault or carelessness on their part or the negligent or indifferent running or management of their locomotive or train."

The defendant introduced testimony tending to prove that there was a heavy fog existing at the time and place the cows were killed which prevented the engineers in charge of the locomotives from seeing the animals soon enough to enable them to stop the trains before striking them.

The railroad track is straight at the place where the cows were killed, and the sole question for determination is one of fact, namely, were the engineers in charge of the locomotives prevented from seeing the animals, in time to stop their trains before striking them, by fog.

Defendant introduced three witnesses, namely, R. Engler and Henry Dezavalla, the engineers in charge of the locomotives, and L. E. Robert, the fireman on one of the locomotives.

Both Engler and Dezavalla testified that there was a heavy fog at the time and place the live stock were killed.

Roberts, the fireman, did not see the killing of the cows and, hence, could give no intelligent account of it.

The fireman on the other locomotive, Frank Gomez, was dead at the time of the trial.

So that the only witnesses testifying as to the fog on behalf of the defendant were the two engineers.

The testimony of Engler and Dezavalla on this point is fully contradicted by that of W. J. Smith, a witness for the plaintiff, and that of the plaintiff himself.

The testimony of the two witnesses for the defendant, as well as that of the two witnesses for the plaintiff, is direct and positive; none of the witnesses was impeached; and as their testimony was of equal weight, that of the defendant's wit-

nesses is offset by that of the plaintiff's witnesses, nothing was proved; and the burden being on the defendant, under Act 70 of 1886, to prove its special defense that the killing was unavoidable, it failed to discharge that burden.

Besides this, the district judge, who heard the two witnesses for the plaintiff and the two witnesses for the defendant testify and observed their demeanor on the witness stand, gave effect to the testimony of the plaintiff's witnesses. He was in a better position to judge as to the proper weight to be given to their respective testimony, and we see so reason for dis agreeing with his conclusion.

Learned counsel for the defendant urges with much force and earnestness that no weight should be given to the testimony of the plaintiff's witnesses as to the fog for the reason that they were not actually present at the time and place where the stock were killed and defendant's witnesses were.

W. J. Smith testified that he saw the killing of the cow by the northbound train and that he heard the southbound train that killed the two cows pass. He testified, in regard to the fog:

"Q. I will ask you this question now: Was there a heavy fog, or any kind of a fog, that morning?
"A. Not to my recollection.
"Q. Are you willing to swear positively that there was no fog?
"A. There was no fog, because I could see a cow for a couple of hundred yards, and if it had been foggy I could not have done it."

The killing of one cow by the northbound train and of the two cows by the southbound train happened within fifteen minutes of each other, and, in our opinion, the density of the fog could not have mate-

rially changed between the happening of the two events, and the witness Smith, who was present at 3:15 o'clock A. M., when the northbound train killed the one cow, was in position to know and testify as to the condition of the fog at the same place fifteen minutes earlier when the southbound train killed the two cows.

The plaintiff, Collins F. Vidrine, testified, page 58:

"Q. I will ask you whether or not there was any fog, dense or otherwise, that morning?
"A. Fog?
"Q. Yes.
"A. Why, ot to hurt—you could see.
"Q. Was it any unusual fog?
"A. No, sir."

Defendant's counsel, in oral argument and in brief, insist that this testimony carries no probative force, but the district judge, who heard the witnesses testify, thought otherwise, and we are not prepared to disagree with the trial court as to the weight the testimony is entitled to.

The testimony of defendant's witnesses, Engler and Dexavalla, is not entirely harmonious on the subject of the fog. One of them testified that the fog was so dense he could not see the animals on the track until he got within 200 feet of them; while the other testified the fog was so dense he could not see the cow his locomotive struck until he got within fifty feet of it.

Dezavalla testified, pages 43 and 44:

"Q. Where it is not foggy, how far ahead of you can you see, approximately, with your headlight? ·
"A. I judge just about a hundred and sixty feet."

Engler testified, page 34:

"Q. How far ahead does your headlight show?

"A. Well, in real fog, the headlight is practically useless, it is perfectly useless.

"Q. Well, if it is not foggy?

"A. I guess a quarter of a mile."

One of the engineers testified that he saw the cows that his locomotive killed when they were 200 feet away, and the other engineer testified that he did not see the cow that his locomotive killed until he was within fifty feet of it. Both engineers testified that at the time they first saw the cows on the track their trains were running at from 40 to 45 miles an hour, and that trains such as those that killed the cattle while traveling at that speed could not be stopped within from 800 to 1000 feet. And yet the engineer in charge of the locomotive that killed the two cows testified that his train was traveling at a speed of 45 miles an hour, and that by the time he struck the cows he had reduced its speed to ten miles an hour. It does not look reasonable to us that if he could reduce the speed of his train from 45 to 10 miles an hour in a space of 200 feet it would require from 600 to 800 feet additional to bring the train from a speed of 10 miles an hour to a standstill.

However, it is useless to discuss what to us appears to be inconsistency.

We are satisfied that the witnesses testified to the facts as they saw and understood them; but in the last analysis the trial court was in better position to properly weigh the evidence than we are.

For these reasons it is ordered, adjudged and decreed that the judgment appealed from be affirmed.